[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was commenced by writ, summons, and complaint made returnable to the Judicial District of Tolland at Rockville on June 7, 1994 The plaintiff wife seeks a dissolution of her marriage to the defendant husband on grounds of irretrievable breakdown. She also seeks an award of alimony and an equitable distribution of the marital assets.
The defendant appeared through counsel and on July 30, 1996 filed an answer and cross complaint The cross complaint sought dissolution of the marriage on grounds of irretrievable breakdown of the marriage and an equitable division of the assets. On December 11, 1996 the plaintiff sought leave to amend her complaint to add a claim for relief for attorney's fees. At trial both the husband and wife testified as well as an expert witness who testified on behalf of the plaintiff. Both parties submitted financial affidavits and proposed orders. At trial forty-eight full exhibits were admitted consisting of, inter alia, tax returns, documents of title, photographs, medical reports, appraisals, letters, bank statements, and payroll records.
I
CT Page 7840
The undisputed facts are as follows. The plaintiff and defendant intermarried on March 31, 1973 at Nashua, New Hampshire. The parties have both resided continuously in the State of Connecticut for at least twelve months next preceding the filing of the complaint in this action. The parties have no minor children born of the marriage and no minor children were born to the plaintiff since the date of the marriage. Neither the state of Connecticut nor any town or municipality have contributed to the support or maintenance of the parties. Both parties were previously married with each marriage having ended in divorce The plaintiff had three children from her prior marriage and the defendant had one from his prior marriage all of whom have reached the age of majority. The parties have one issue of their marriage, Eric, who is now twenty three years old The defendant is presently 53 years old and the plaintiff is 55 years old. The defendant is in good health although he suffers from the loss of hearing in one ear, from a back injury, and from occasional limited loss of feeling in his right arm. None of these problems impact his earning capacity or require any extraordinary medical treatment. The defendant received his associate degree from Manchester Community College and has approximately one hundred hours towards his bachelor's degree.
The parties have agreed to the valuation of the assets that they presently own and the court accepts these values. Those values are as follows a joint escrow account being held by both counsel containing the net proceeds of the sale of two of the marital residences and the proceeds of the sale of a jointly owned business known as Video Galaxy (Galaxy) in the total amount of $179,776.50 of which $20,000 is from the sale of Galaxy; 566-568 Carew Street, Springfield, Massachusetts with a value of $75,000 and a net asset value of $30,000; a Florida condominium with a net asset value of $127,500; a Corvette with a net asset value of $14,000; a Chevy Blazer with a net asset value of $4,000; a Lexus with a net asset value of $20,000; a Fidelity Investment account with a value of $24,270; and an ITT Hartford Savings and Stock Plan with a value of $22,028.[1]
Additionally, 15 Pine Tree Drive, Holland, Massachusetts has a net asset value of $37,500 after taking into consideration the mortgage The plaintiff is also the owner of a parcel of property on Martha's Vineyard, Massachusetts that the parties agreed would remain the plaintiff's property and no value was placed on this lot. Finally, the parties jointly own a lot known as 689 White Street, Springfield, Massachusetts which is presently under foreclosure and the evidence indicates a deficiency judgment may CT Page 7841 result from those proceedings.
 II
Based upon a review of the exhibits as well as the testimony at trial the court finds the following additional facts The defendant is presently earning a net weekly wage of $910 from the Hartford Insurance Group.[2] He additionally receives a gross of $937.62 per week from his state police retirement plan. The defendant officially retired from the state police on February 1, 1994 and prior to retirement elected to receive a payout of his pension benefits based upon his life only rather than a last to die option which was available. The plaintiff, in order for the defendant to make this election, was required to execute a waiver of her rights. She did so and therefore the sum of $937.62 will be paid to the defendant for his lifetime Additionally, the defendant receives $238.37 per week in rental income from the Carew Street property This is sufficient to meet the expenses and mortgage payments on the property The court finds that the fair rental value of this property is $1350 per month or $314 per week thus resulting in approximately $76 per week more net income. The defendant is also the owner of two term life insurance policies. One policy is through the State of Connecticut and has a face value of $28,500 The other policy is through the Hartford Insurance Group and has a face value of $50,000.
The plaintiff is presently receiving social security disability payments in the amount of $155 per week. She also receives quarterly payments in the amount of $4,827 which payments are the result of a personal injury award. These payments will terminate in September of 1998.
With respect to the state police retirement plan the defendant claims that this pension is in consideration of twenty-eight years of service with the state police. Further he claims that of those twenty-eight years he was married to the defendant for seventeen years. Thus the defendant suggests in his proposed orders that 31% of this asset should be assigned to the plaintiff. However, the court finds that of those twenty-eight years, four and one half of those years represent credit for service in the military The defendant purchased those credits in 1981, while married to the plaintiff, using a payroll deduction plan. Additionally, the defendant earned credits for service he rendered to the state police from 1966 to 1971.[3]
Upon resignation he was refunded his contributions. After he CT Page 7842 reenlisted with the state police he was allowed to repurchase those credits and did so in 1985, again, while married.
In August of 1966 the defendant took a position as a trooper with the State Police. He remained in this position until 1971 when he resigned while an investigation was pending concerning an alleged relationship with a married woman and an alleged assault on another individual (Plaintiff's Exhibit 1). In 1976 he rejoined the state police as a trooper until his promotion to the position of detective. His career was one marked with success as he served in the organized crime unit as platoon commander until he accepted a position in the Commissioner's office He officially retired on February 1, 1994 from the State Police. Upon retirement he received $49,000 for accrued vacation pay from the state which, after taxes, netted approximately $30,000. These funds were not shared with the plaintiff and she received no benefit from them. Upon his retirement he took a consulting position with the Hartford Insurance Company which became a full time position in their Special Investigation Unit. The defendant is presently employed by the Hartford Insurance Group. His employment is stable and he appears to be well established in his position.
The plaintiff and defendant met in 1969 and cohabited for a few months prior to their marriage in 1973 The plaintiff a few months prior to her marriage to the defendant purchased a home using $8,000 of her own funds. They accumulated their not insubstantial estate through a combination of hard work and their ability to realize asset appreciation in the real estate market of the 1970's and 80's. The defendant provided a constant source of income at a predictable level throughout the marriage through his employment and was savvy at locating and negotiating successful real estate investments. While the plaintiff took care of the significant duties in raising four children and maintaining the household, both shared duties in managing and improving their real estate investments. Both parties complemented one another in the business arena and both were significant factors in accumulating the wealth that they share today.
In 1985 the plaintiff purchased a retail video rental store, Galaxy, in Springfield, Massachusetts This operation, which was principally operated by the plaintiff, was very successful and contributed significantly to the parties quality and style of life through the 1980's. After the 1989 accident, hereinafter CT Page 7843 discussed in detail, the plaintiff returned to work and for the next two years operated this business successfully. When the plaintiff decided to relocate the business to East Longmeadow, Massachusetts the business failed leaving the plaintiff with only one realistic option, which was to sell The sale took place in 1996 and the net proceeds of the sale after payment of related obligations amounted to $20,000 which amount is presently held in the joint escrow account The proceeds used to purchase Galaxy came from the profits derived from the sale of a six unit apartment building that was purchased for $70,000 and resold for $155,000 This apartment building was purchased with $10,000 of the $20,000 the plaintiff inherited from her father's estate. In December of 1991, after the parties separated, the plaintiff withdrew $21,000 in joint funds from the Savings Bank of Rockville The plaintiff indicated in her testimony that she was concerned that if she didn't withdraw those funds the defendant would have done so These funds were utilized solely by the plaintiff.
In 1989 the plaintiff was involved in a motor vehicle accident in which she sustained serious injuries to her head and pelvis as well as numerous lacerations. After being transported by helicopter to Hartford Hospital she underwent surgery, spent two weeks in intensive care and thirty days in the hospital. As a result of those injuries she underwent neuropsychological treatment and psychotherapy. While there is dispute between the parties as to the cause of the plaintiff's present medical disability, it is clear that the plaintiff presently suffers from depression, anxiousness, short term memory problems, concentration problems, and difficulty in sequencing and organizing items Additionally, she suffers from pain in her hip as well as a vision problem. Prior to the accident the plaintiff suffered from a borderline personality disorder which was exacerbated by the 1989 accident. In 1996 she was determined to be totally disabled by the Social Security Administration. As a result, the plaintiff has no earning capacity based upon her physical and psychological condition Testimony by Dr. Robert E. Correll, a psychologist, indicated that the plaintiff's initial prognosis was for a full recovery from the injury after a short period of recovery The plaintiff did in fact return to the working world after the accident and successfully ran Galaxy for two years.
The plaintiff, who had throughout the marriage engaged in social drinking, began to drink more heavily shortly after the CT Page 7844 accident. While it is never possible to determine with great certainty the psychological or other reasons why social drinking develops into far greater problems in some people but not others, the evidence indicates, and the court so finds, that in this case it was occasioned by the ongoing physical pain that the plaintiff suffered from the injuries received in the accident and the frustration she experienced in not being as productive as she was prior to the accident The plaintiff's behavior became more erratic after 1993 and this erratic behavior lead to numerous arrests on various charges involving assaults on her husband and other threatening behavior.
The plaintiff claims that the marriage broke down in part because the defendant was unable to cope with her disability which significantly changed her demeanor, attitude and conduct Additionally, the plaintiff claims that her erratic behavior was directly attributable to the brain stem injury she suffered in the 1989 accident Correll testified that the prognosis in 1989 that the plaintiff would fully recover within a short period of time was in error He further indicated that the conduct of the plaintiff was consistent with the nature of the injury that she had received The plaintiff also claims that the defendant engaged in an extramarital relationship which lead to the breakdown of this marriage.
The defendant admits to having an extramarital relationship but denies that it was the cause of the breakdown or that it occurred prior to separation. The defendant claims that the radical changes in the plaintiff's personality were the cause of the breakdown in the relationship. Furthermore he suggests that these changes were occasioned by the plaintiff's alcoholism and not from the accident.
On the issue of the defendant's extramarital affair the court finds that there was insufficient credible evidence to support the claim that the defendant's affair was the cause of the breakdown of the marriage. Rather, the defendant's inability to cope with the significant personality changes that the plaintiff was experiencing and which continue to this day led to the current proceedings.
While Correll's testimony was credible, it became apparent that he was unaware of the extent of the plaintiff's alcohol problem that developed after he saw the plaintiff in 1989 and before he saw her the next time in July of 1995.[4] The CT Page 7845 defendant convincingly elicited testimony that the plaintiff had functioned for two years after the accident in a manner not dissimilar to her conduct prior to the accident Additionally he demonstrated, through Correll's testimony, that when brain stem injuries occur the damage is done immediately and that while the extent of recovery is often difficult to predict, it is not a progressive type injury where post-injury deterioration can be expected. Finally, the defendant brought out through Correll that severe alcoholism could have many of the same effects on the plaintiff that could be expected from someone who had brain stem injury similar to that which the plaintiff suffered.
Although the plaintiff has denied the extent of her problem with alcohol, which denial is not unusual for someone afflicted with this condition, the court finds that the irretrievable breakdown of this marriage was occasioned in large part by the plaintiff's abuse of alcohol that lead to the significant changes in her personality. However, the evidence also leads the court to the conclusion that the plaintiff's alcoholism leading to the erratic behavior and personality change cannot be considered, under the circumstances of this case, as a reason to assess fault for the irretrievable breakdown of this marriage on the plaintiff.
The plaintiff has expended funds and owes additional amounts to various attorneys as a result of this proceeding. The plaintiff has requested that the defendant pay $15,000 towards attorneys fees for this proceeding although she has expended a considerable amount in excess of this requested amount.[5] Two previous attorneys have been discharged prior to present counsels involvement in this matter. This matter was tried to the court over a two day period and, as previously noted, numerous exhibits were admitted The court finds as reasonable the attorney's fees charged by present counsel in the preparation and trial of the issues in this matter. Therefore, based upon the great discrepancy in earnings, the plaintiff's disability, the need to preserve the other financial awards contained herein, and considering the other criteria in § 46b-62 and § 46b-82, the court finds that an award of counsel fees to the plaintiff in the amount of $15,000 is justified.
After considering all of the factors set forth in §46b-81 and § 46b-82 and applying those to the evidence the court enters the following orders:
1. A decree is entered dissolving the marriage of CT Page 7846 the parties on the grounds of irretrievable breakdown, all of the allegations of the complaint and cross complaint having been proven.
 2. The defendant shall convey to the plaintiff by quitclaim deed any and all interest he may have in the Florida condominium known as 621 Gulf Boulevard, Clearwater, Florida and the property located on Martha's Vineyard, Massachusetts properties within thirty days of the date of this order.
 3. The plaintiff shall convey to the defendant by quitclaim deed any and all interest she may have in the 566-568 Carew Street, Springfield, Massachusetts and 15 Pine Tree Drive, Holland, Massachusetts properties within thirty days of the date of this order.
 4. The defendant shall transfer to the plaintiff any interest he may have in the Lexus automobile and shall cooperate fully in the execution of any documents reasonably necessary to effectuate the transfer of title and registration to the vehicle.
 5. The plaintiff shall transfer to the defendant any interest she may have in the Chevrolet Blazer and Corvette and shall cooperate fully in the execution of any documents reasonably necessary to effectuate the transfer of title and registration to the vehicles.
 6. The Fidelity Investment Account shall remain the sole and exclusive property of the plaintiff free of any claims by the defendant.
 7. The ITT account shall remain the sole and exclusive property of the defendant free and clear of any claims by the plaintiff.
 8. The defendant shall assign by domestic relations order a 50% interest in the state police pension plan to the plaintiff and shall take all CT Page 7847 necessary steps to effectuate this assignment within thirty days of the date of this order.
 9. The personal injury settlement payments in the amount of $4827 shall remain the sole and exclusive property of the plaintiff free and clear of any claim by the defendant.
 10. The plaintiff's social security disability payments shall remain hers exclusively free of any claims by the defendant.
 11. The joint escrow account shall be divided between the parties with the plaintiff receiving a forty percent interest in the fund and the defendant receiving a sixty percent interest in the fund. Both counsel and parties shall cooperate in effectuating this distribution no later than thirty days from the date of this order.
 12. The parties shall cooperate in the disposition of a certain parcel of property known as 689 White Street, Springfield, Massachusetts. Any net proceeds after payment of all outstanding liens and encumbrances shall be divided equally between the parties. If a deficiency results from disposing of the property then the parties shall share equally in the deficiency.
 13. The defendant shall provide and pay for medical insurance for the plaintiff either through the State of Connecticut, his current employee, or its equivalent until such time as the plaintiff qualifies for Medicare, but in any event not later than December 31, 1997.
 14. All personal property presently in the physical possession of each party shall remain the property of that party free and clear of claims of the other. The property currently stored at Woodland Moving and Warehouse, Inc. shall be deemed to be in the possession of the plaintiff. CT Page 7848
 15. The defendant shall pay to the plaintiff as alimony the sum of $300 per week. This alimony shall terminate upon the earlier of the death of either party, the plaintiff's remarriage, or ten years This order is subject to modification upon the appropriate demonstration of a material change in circumstances (See Scoville v. Scoville, 179 Conn. 277 (1979)).
 16. The defendant's interest in a retirement plan with his present employer, ITT Hartford, shall remain his free of any claims by the plaintiff. The plaintiff shall execute any documents necessary to terminate any rights she may have in the plan as may be requested by the defendant.
 17. Except as specifically otherwise ordered, the plaintiff shall hold the defendant harmless and shall indemnify him from all debts set forth on her financial statement.
 18. Except as specifically otherwise ordered, the defendant shall hold the plaintiff harmless and shall indemnify her from all debts set forth on his financial statement.
 19. The defendant shall pay to the plaintiff $15,000 towards her attorneys fees within thirty days of the date of this order.
 20. The defendant shall appoint the plaintiff as sole beneficiary of the life insurance policies with the face values of $28,500 and $50,000 and shall provide on an annual basis proof that the policies are in effect, the plaintiff is the sole beneficiary, and the premiums are paid current. This obligation shall terminate upon the termination of the alimony obligations set forth in Order Number 15.
 21. Counsel for the plaintiff shall prepare and both counsel shall sign and submit to the court a judgment file in accordance with this opinion within twenty days of the date of this order CT Page 7849 Said judgment file shall include the proposed domestic relations order contemplated in Order Number 8.
Zarella, J.